Thank you, Your Honor. My name is John Lee. I'm an Assistant U.S. Attorney, and with Assistant U.S. Attorney Monica Tate, I represent the United States. You'll have to speak up a little bit. Yes, Your Honor. Ms. Tate is here to address the CAFRA issue that we spoke about a little bit earlier this morning. I'm here to address the summary judgment issue. With the Court's permission, I'd like to just jump right into the summary judgment issue. And with the Court's permission also, I'd like to reserve about a minute of our time for rebuttal. Sure. Specifically, I want to address the issue of whether, when you just consider the evidence, that the District Court did not exclude whether summary judgment was proper. And I would submit, Your Honor, that based on just that evidence alone, summary judgment was not proper in this case. This case involves a complex foreign investment scheme, but at its core lies fraud that's a fairly garden variety. What I want to do this morning is just highlight some of the key evidence which I think would be important. Before you do, I was a little unclear. Were you – did your position get laid out in the District Court at all in terms of what the evidence would show? Your Honor, the position that was laid out in the District Court is based on all of the evidence that was submitted. Was anything brought to – organized in normal summary judgment fashion? Normally, when you have a summary judgment, there's back and forth so that the District Court has available to it what it is that the government believes will create a triable issue. Was any of that done? Yes, I would say it was done, Your Honor. The opposition papers in the District Court did lay out all the evidence that the government had, both the opposition and the supplemental opposition papers. So despite the fact that the District Court ended up carving out a lot of the evidence, the position and the evidence that the government submitted was before the District Court. And I might add that because the government's argument on appeal focused primarily on the evidence that the District Court did not exclude, that evidence was before the Court as well as the arguments. Okay, we have the elements of fraud. Tell me how you satisfied them. The elements of wire fraud, basically, Your Honor, are that there's a scheme to defraud. There's a use of the wires in furtherance of that scheme and there's some specific intent evidence. The evidence that... What's your best evidence of a scheme? What was the scheme? The scheme was basically to take the investments of victims like Das and to tell them that they were going to invest it, generate profits of about 37.5 percent returns. Is that in your complaint? The... I think the answer is no. Well... So how do we get to any of the Das evidence if it's not in your complaint? Well, Your Honor, the evidence that refers to the fraud in this case does encompass victims like Das. It didn't lay out detail by detail exactly how Das...  The victim of the fraud was for companies like Das. Symtech was another one. There are other victims such as Optional. The main victim that the government is aware of, however, is Das. Hyunjoon Kim basically elaborated... So what was the representation made to Das that you claim is false? I'm sorry, I didn't quite... What was the representation made to Das that you claim is false? Yes. Well, one representation that was made to Das that clearly was false was Hyunjoon Kim told Das on August 27, 2001, do not be worried, your investment is safe. That clearly was false because at that time Hyunjoon Kim had already begun the process of converting Das' money into U.S. dollars. Why transferring them out of Korea and to the United States? That occurred... That began 11 days ago on August 16, 2001. The false representation there is found in Government's Executive Record 281. The evidence that shows that... And we have to rely on inference for that. The transfers were made prior to the statement that your money is safe. I'm sorry, the transfers... The transfers were made prior to the time that the statement was made that your money is safe. So we, by inference, you say that supports fraud. The transfers were made... The transfers constituting the taking of the money from Korea to the United States were made before the fraud of the statement that your investment is safe. That is correct, Your Honor. What takes us out of the normal investor situation when you say, Well, your money is safe. I earned returns of 35 percent last year. We can expect the same this year. Am I just garden-variety puffing? Well, Your Honor, I... In isolation. I understand what happened later, but I'm just talking about what happened to Das. I don't think it's just garden-variety puffing. I think 37.5 percent is a pretty hard figure. What's the evidence that they didn't have a return on that the prior year? Well, there's no evidence that Das received any appreciation. No, no. I'm not talking about that. Because I understand what happened at that meeting. Last year we had returns of 35 percent. We expect the same this year. Your money is safe. You can get it out any time you want to. That's what happened. Where's the evidence? Because I didn't see it, and you can probably point it to me, of what the actual returns were the prior year. Your Honor, I think it's fair to say that there isn't evidence in the record that shows... So we don't know that that's false. Pardon? We don't know that that's false or true. Well, I think we have a lot of evidence to believe that it's false because Das never got any returns. No, no. I'm talking about what happened in the future. I'm talking about the past performance of the company, the investment company. Well, again, there's a lot of evidence from which the reasonable inference could be made that this statement was false, maybe because of all the lies that were being perpetrated by Kyungjoon Kim. There is no hard evidence in the record, if that's what Your Honor is asking. So what the returns were at all from this company? I mean, that would seem to be a pretty basic question. What were the returns of the company the prior year? That's an easy statement to prove true or false. Well, Sungwoo Kim testified in his declaration that Das was presented with a lot of documents, including newspaper accounts that touted how profitable MOF was and what a genius Kyungjoon Kim was. I don't think there's anything specific in the record that shows that MOF's return the year before was 37.5%. There is a lot of evidence in the record to show that a lot of the representations that were made to Sungwoo Kim were either demonstrably false in the case of the representations about the investments being safe or never turned out to be true. For example, the representations about your investment being able to be redeemed within one month, that wasn't true. In fact, Das never saw most of his investments returned. There were many other falsehoods that Kyungjoon Kim perpetrated, including the signers of the wire transfers. Supposedly, there were people named Sally Cox and Sandra Moore. Kyungjoon Kim's own employees testified that they never saw anybody named Sally Cox. One of them testified that she saw Kyungjoon Kim sign Sally Cox's name. Another employee, Jin Young Lee, testified that Kyungjoon Kim ordered her to cut and paste the signature on future wire transfer orders. Sandra Moore, the other person who supposedly signed some of the wire transfers, testified when she was shown Next Step's wire transfers. She said, no, I didn't sign these wire transfers. What does that have to do with the fraud on your victims? That happened afterwards, and I agree that it shows some potential problems with activity, but I'm trying to get you to focus on what are the elements of wire fraud, and particularly what was represented, what was false, and what happened. Let me start with this. I think this is what frustrated the district court, and I'm trying to – you throw a bunch of things at the wall and say, this is bad, this is bad, this is a lie, this is a lie. But he may be lying continuously, but it may or may not end up being fraud. Well, Your Honor, the – one of the – the crucial element here about wire fraud is the scheme of the fraud. And it's not limited to just misrepresentations of future fact, if that's kind of what the district court wanted. There was some of that, but there was a lot of evidence of fraud that showed that he was concealing the fact that he was behind a lot of these activities. Certainly, if victims like Das had known that Hyun Bin Kim was behind these, it would have been material to them. They would have known – they would have wanted to know this fact. Perhaps they could have done something more to withdraw their investment. Where is that in your complaint? Well, the complaint describes a general scheme where victims were defrauded. Hyun Bin Kim acquired this company and then funneled these monies to the United States. It didn't focus specifically on any one particular company. It did describe the general scheme of Hyun Bin Kim's scheme to defraud and then the efforts to wire transfer the monies to the United States. At the time of summary judgment, when we had to present evidence to show that fraud, we thought it was incumbent to show an actual misrepresentation, and that's where Das came in. And that's the only one you have, right? In terms of – I mean, you didn't plead in your complaint, and you did tender to the district court, but that's it on the fraud. Not on the transfers, not what happened after, not embezzlement, not what happened with the shares of the company, but just the Das interaction. And that was three representations. One, 35 percent return happened last year. We expect to say next year your money is safe and you can get it out, maybe four representations. Well, Your Honor, I think there's a lot more than that. And what I want to – I think perhaps it would be helpful to – If we went to your brief, would we find answers to all of these questions that are being posed? Well, what I wanted to say, Your Honor, is that – The answer to my question – my question is, if we go to your brief, will we find a summary of what evidence you had to show that the past representations were false? Yes, the past representation as well as – Other than you're just stating. Yes, yes. So where will we find the statement in your briefs about the 35 percent was a falsehood? This is an example. The 37.5 percent evidence is brought out in the declaration of Sung Woo Kim. If Your Honor is – And we'll find that in your brief? Yes, that – You mean they didn't get the return? Yes, that's correct. But there's no allegation that I could see that said the statement that they made 35 percent or 37 percent the year before was false. We won't find that anywhere, will we? There's no hard evidence in the record that shows that they did not make 37.5 percent return last year. But what I would submit, Your Honor, is that there is a lot of evidence in the record to show that when you couple with all the other false representations, there was no basis for this statement to be true. Are you talking about the statement of the past performance? Yes. You mean he lied about other things, and therefore he must have lied about the 35 percent past performance. I think that's a fair inference, Your Honor. And, Your Honor, the – I mean, that's a pretty critical fact, and it's ascertainable. Well – You got the records of the company. You know what the performance was, theoretically? And you can't tell us here whether that was really true or false? I can't say whether or not it's true that 37.5 percent was actually made by the company, but the evidence that is available in the record certainly strongly tends to suggest that that is not true. What's the evidence that there was a scheme? Well, Your Honor, let me address that. I think it's important to distinguish between false representations of a fact that were known to be false and false representations or other lies that can constitute a scheme to defraud. He's asking you what it is. Yes. What is it? Okay. Well, I mentioned the false signers, Sally Cox and Sandra Moore. There was a representation – I want to get away from representations, but another lie that Kyeong-jin Kim perpetrated was that the wires that were supposedly going to Korea were being received by companies rather than himself. The companies were Next Step, Zoic, and Blackstone. But these are basically alter egos of Kyeong-jin Kim. They're not really legitimate companies. Another lie that shows the scheme to defraud is that there was a liquidator's letter that said, don't contact BBK, contact MAF at 137 North Larchmont. That was a lie. In fact, there was no liquidator. The reasonable inference there is that Kyeong-jin Kim wrote the letter. There's an employee, Jin Young Lee, who testified that KJ Kim gave her that exact same address to distribute to the investors. Kyeong-jin Kim also never disclosed the fact that BBK had its license suspended. What he said in the letters to the investors was that BBK decided to discontinue its operation. That's found in Government Excerpt 288. He never told them that he couldn't continue his operation. And, in fact, the 137 North Larchmont address turned out to be nothing more than a mailbox dropped near Beverly Hills. All of that's in your brief. Is there anything that's not in your brief that you want to call our attention to? Your Honor, I agree that everything's brief. I do want to point out, though, that, Your Honor, besides, as I understand the case law on wire fraud and misrepresentations, the scheme to defraud is not made solely of false statements that are false, demonstrably false at the time that it was made, although that evidence certainly is in the record. But it also is the fact that there's a statement out of U.S. v. Woods, 335 F3rd 993 at 998, that says a defendant's actions can constitute a scheme to defraud, even if there are no specific false statements involved. If a scheme is devised with the intent to defraud, and the mails, and in this case it would be wires, and the mails are used in executing the scheme, the fact that there is no misrepresentation of a single existing fact is immaterial. Sure, I may have made 30 percent last year, but I get money from you intending to put it in my pocket, and I tell you I'm going to invest it, and I don't. That would be true. It wouldn't make any difference that I made 30 percent, if my intent is to steal it from you. I would absolutely agree with that, Your Honor. I thought you might. You've got about three minutes left.  Yes, I do, Your Honor. Okay. I don't want to cut you off, but I also am sure she's being anxious about... He. Oh, he? I'm sorry. Pick a lawyer. Pick a lawyer. Your Honor, Counselor Doss is here, and perhaps he can speak to the panel. We'll give you extra time. We're not going to... I'm sorry? Go ahead. We're not going to cut you off. We'll let you talk. Good morning, Justice Thomas, Justice Trott, Justice... Judge. Judge. We're judges. There's no justice in the Ninth Circuit. Good morning, nonetheless. Justice is a term for the Supreme Court, so we're happy for the elevation. Almost run out of morning, but good morning, nonetheless. Yes. May it please the Court, my name is Michael Zweig of Parker Mills. We represent Doss Corporation, a palantir, and one of the claimants in the cases below. While this is a complicated case and group of consolidated cases, our purpose is really rather simple. We are trying to obtain a day in court for Doss to prove its constructive trust claim to get back its $14 million from the Kim parties. I can't possibly address all of the issues that have been briefed, so subject to questions of the panel, I thought I would touch upon the jurisdictional issue as to whether the district court maintains jurisdiction, whether or not the government's complaints... Your argument is it's in-rem jurisdiction, and once it's invoked, you get your day in court, right? I'm sorry? Your argument is it's in-rem jurisdiction, and once in-rem jurisdiction is invoked, you get your day in court. The court just can't bail out just after dismissing the government. How wonderfully simply you have put it, Your Honor. I didn't even need your full time, Your Honor. So you're convinced on that completely? Well, you might want to reserve some for rebuttal in case they have to say anything, but I take your point. Okay. All right. Well, then I will reserve some time for rebuttal of my precious little time as to that particular issue. Yeah. If we decide in your favor on that issue, it goes back to the district court for a full hearing. Yes. And, in fact, you don't need to reach the jurisdictional issue at all in the event that the government's claims are returned to the district court for trial. That issue would then disappear. Right. But if the government loses, then the question becomes jurisdictional and your right to assert your claims based on on-rem and-rem jurisdiction. And we would maintain the district court still has jurisdiction to adjudicate those claims where we have asserted them in a timely fashion under CAFRA. Okay. We have also raised a couple of issues on summary judgment on behalf of DAS as to the standards that were applied. The summary judgment order attacks the evidence in a strict trial capacity, I'll say, as opposed to looking at the content. And we've cited the cases of Frazier from the Ninth Circuit and FDIC, which makes it clear that in determining whether there's a genuine issue of fact, whether the case should go to trial, the court should look at the content. It should not be lost in the form of the evidence because the evidence may be presented in admissible form at trial. In Frazier, for example, we had a diary. And the Ninth Circuit held that even though the diary itself might not be admissible evidence, the content might be offered in admissible form at trial. And the Ninth Circuit speculated as to the ways in which the content might be presented in admissible form at trial and concluded that the trial court on summary judgment should consider that evidence. Likewise, in the FDIC case, it was a grand jury indictment, which was not admissible in and of itself, but which warranted consideration on summary judgment. Much like we would contend Magistrate Abrams' findings of fact and conclusions of law below, a 23-page opinion finding extraditability. And that document was, for example, excluded by the district court, but the content of it we would maintain, like a grand jury indictment, should be considered on summary judgment in evaluating whether there's a trialable issue of fact. And we have listed in our brief about seven categories of evidence where we maintain the district court looked solely at the form and not the content, which was the wrong standard to be employed. We have also argued, and I'll be brief on this as I see the time is running out, on the Celotex issue that the standard was, although the correct words were parroted from the opinion, it was not correctly employed. That is, the district court went straight to the opposing party's evidence and did not require the move-in to show the absence of evidence. There was no showing of absence of evidence. In Celotex, for example, the asbestos case where the plaintiff admitted in pleadings and discovery that they had no evidence to show that the plaintiff had been exposed to the defendant's product, that was an example of the absence of evidence. We did not have that in this case. I think I'll reserve the remainder of my time for rebuttal. Thank you. Thank you. You had a preview of CAFRA before, so you know. Right, and I'm actually here. My name is Ralph Rogeri. I'm representing Optional Capital. We kind of feel a little bit like we were a pinball in a pinball machine. Not much about the particular fraud claim that we were serving and was mentioned by the government. Its complaint talks about the embezzlement of fraud, embezzlement of monies from Optional that the appellees in this particular case perpetrated. But clearly there was a fraud here, and there was evidence of a fraud on Optional, beginning with the takeover of Optional, which we contend was all done to a scheme to loot the company. The false representations being that each of the board of directors was represented by Christopher Kim pretending to be five people, Steve Valenzuela, Maurice O'Bannon, his sister. That was false. There was testimony from Sandra Moore and Steve Valenzuela that they were not participating. Maurice O'Bannon was somebody who Christopher Kim claimed he didn't know. His sister actually used him as from a designee of Nevada Corporate Services. Then once in control of the company with the fictitious board of directors, they misused the position to issue themselves 13 million shares of stock, which they then turned around and sold on the market. The false representations there and the concealments being that these companies such as GE Investment Capital, who I believe was here earlier today, this company, AM Pappas, all these particular companies were investing in Optional, and the stock was going to them. None of that was true. In fact, Christopher Kim admitted that he was financing all of these, and it was phony corporate charters that he had given to the employees to register these companies as appropriate to receive stock and invest. Once the investment certificates were issued in Korea under these phony names, then he would turn around and use those same employees to trade the stock, sell it, and then it would be wired back to the United States to all these accounts in Next Step and was used to ultimately purchase all of the property. All of this is the same case that Optional sued Kim for in the civil case? Yes, Your Honor, and the jury found- Yeah, but then what happened? Well, Your Honor, Judge Collins said that there was no evidence because we didn't appropriately oppose the motion, and I think that when it ultimately comes to you- Oppose what motion? The motion brought by- For a new trial? For a new trial, said that we didn't cite to the record and do other things that, in her view, we should have done to appropriately oppose the motion. So her ultimate ruling was not that there wasn't any evidence because we had Steve Valenzuela testify. I thought she ruled that, as a matter of law, you didn't have a case. Judgment as a matter of law was entered against you. Is that right? Well, judgment has not been entered yet. She did issue an order, which Mr. Honig submitted to this particular court, and we are in the process of attempting to have that order set aside, and it may ultimately be before this particular- Okay. What's the status in the district court as we stand here today? The status- We stand here today. We sit here today. What's the status in the district court of your case? Well, she has entered that order. There has been no new judgment entered. We are filing a motion for reconsideration. One will be filed today. Right. But as of now, if she's entered judgment against you as a matter of law, right? I mean, she's entered an order saying that, as a matter of law, you're not entitled to relief, and she hasn't entered a formal judgment yet. Is that where we are? Correct. So, I mean, we had seven people who unanimously felt clear and convincing, and I can talk about the conversion as well. You filed no answer to the motion for a new judgment? No, we did, and it was a lengthy opposition, but the manner in which it was filed was not-and she didn't hold a hearing. If we would have had a hearing- One thing at a time. What was her objection to your-am I gleaning from the record-is that you didn't cite the record or something. Is that right? Right. We didn't cite the record on these points. So she did not rule that there was no evidence. She ruled there was some defect in the manner in which you opposed the motion. Correct. Do you know what you're telling me? And then she discussed some of the evidence that was cited by the defense in their motion and how that didn't support it, but didn't ignore all of the evidence that supported the judgment. The testimony of Steve Valenzuela, the testimony- That's not on review here. We're just kind of trying to determine the status. But, you know, she sat on this case and your case. I mean, she's certainly familiar with the evidence. Well, and the jury listened to it all, and she was, which is surprising, because if you look-and, again, none of this is here. I was there as well, and, you know, we had continual discussions through the course of the pretrial conference and jury instructions and things like that where all of this evidence was discussed and why this instruction is appropriate and on and on down the line. And then when we get, you know, at the end, all of a sudden we receive an order that says, you know, you didn't oppose this real well, and none of the evidence that all of this supports the judgment is in there, in a particular order. And- In any event, you're going for reconsideration. Yes, Your Honor. Okay. Thank you for your argument, counsel. We're way over time, so I promise Ms. Tate I give her some time, so. Okay. We're probably 15 minutes over time, cumulatively. And I know it's a complex case, but- That's why we rely on briefs a lot. And, Your Honor, I apologize. Perhaps we came with the wrong idea. We thought that all of us had 20 minutes. Oh, really? No, you're kidding. Yes, that's what we were told by the clerk's office, Your Honor, and that's why we- Who in the clerk's office told you that? They didn't tell me, Your Honor, but they told my colleagues. All right. That's fine. Who told you that? You each got 20 minutes. No, no. That- No, no. That the entire table had 20 minutes. That's right. You got way over 20 minutes. Yes, indeed we had. Your Honor- Oh, yeah. You knew that. Your Honor, just to explain- But, Ms. A, we're here to listen to you now, so let's- Thank you, Your Honor. We'll give you five minutes. It's important. I don't have much to say on the 983A3A issue, which I think was well covered in the earlier argument, other than to say that the order here is essentially that the district court has no power ever to issue these orders ex parte, and I think that that is clearly wrong, based on the information that the court already has before it. Very briefly on the cross-appeal issue, if I may speak to the Kim Clements cross-appeal, the Kim Clements cross-appealed to argue that there is no in-rem jurisdiction over the assets in Switzerland. I think that the $1.67 million case that came out of this court in January answers that question. Even though that court didn't address whether the service of the warrant itself is necessary, the whole case was about whether in-rem jurisdiction was created by a statute. That's what the service of the warrant is supposed to do. It gives in-rem jurisdiction unless you have a statute. And here we do. We have a statute that provides for in-rem jurisdiction. The service of the warrant in an overseas jurisdiction over which the United States have no control is no longer required, and Congress has eliminated that requirement through 28 U.S.C. 1355b2. If I want to put one thing that I didn't mention in the brief, looking at 1355d, Congress in the same act that amended 1355b2 and gave this extraordinary new jurisdiction over foreign assets, Congress provided for service of process in the United States outside of a district court, which was a — excuse me, outside of the district hearing the case, which is the first time that was provided by Congress. And in that same paragraph, Congress didn't mention anything at all about serving process in foreign countries. And I think that supports the government's argument that no longer — service process is not required. And, of course, the amendments to Rule G also support that, which the advisory committee note clearly says that the only thing that's required is delivery of the process to the foreign government, which is what was performed here. And that's all I have to say because I think we do want to reserve a couple minutes. Thank you. Roberts. Good morning, Your Honor. I'm Eric Honig for the Kin Claimants in this case. Your Honors, I'd like to first answer Judge Trott's question from the Farrar case that was argued earlier. Judge Trott asked Mr. Gabbard how or where's the party in this case when we're talking about getting an extension of time of 90 days to file a complaint. Well, the statute actually refers to parties, and it's Section 983a3a. And that extension provision, or the provision to allow for extensions, says that Extensions of what? Extensions of time to file a complaint, not the 60-day notice extension, which is 93a1, but 93a3a, allows for extensions of time upon good cause shown or upon agreement of the parties. So that statute on its face presupposes that there's a party other than the government, and that party is the person who filed the claim. And that's the distinction between 983a1, which is the 60-day notice provision and the extensions of time for that, and the 90-day notice for filing a complaint, because there is a party. And once you file a claim saying, I am contesting the seizure, you now, according to the statute, on the face of the statute, you are now our party. And the government has two choices then before it files the complaint. It can get an agreement from the party, the person who filed the claim, or if not, then they have to go to court and show good cause. Now, the local rules in Southern District or the Central District of California, Local Rule 7-19, requires notice to the other side to get an ex to before you file an ex parte application. And so if you read the statute, you don't have to look at the legislative intent. You don't have to look beyond that one clause, because there is a party. The 60-day notice, I'm sorry, 60-day notice requirement and getting an extension for that, there's no party at that point. So there's no person on the other side to contact to try to get an extension of time or to notify that you're going to seek an extension of time. That's necessarily ex parte. It didn't have to be written in to say that it can be done ex parte. Same thing as a seizure warrant under Rule 41. As a matter of fact, as Ms. Moriyama had said, that time period is continued investigation. She talked about trying to identify the true owners and not contacting the true owners and letting them know. Well, that's the purpose of the 60-day notice requirement, getting an extension for that ex parte, and the agency can get an automatic extension on their own without even going to court, is to give them the time to identify who they may want to notice. And in this case, and that's why, to extend this 90-day period, which is called the CAFRA death penalty by the government, they know that they have to file it in 90 days. If they don't, and that's the whole reason one of the raison d'etre for CAFRA is to make the government file something timely. Now, Mr. Gabbard talked about the question of whether complaints could be filed under seal. Judge Fischer, I think, pointed out to him in Rule G that they can be. And, in fact, they can. And the government could have done that in this case. And, in fact, there were three complaints filed in this case. Two were filed under seal, having to do with real estate. The third one, though, they went and got the ex parte extensions of time. They could have filed the complaint on time, within the 90 days, and filed it under seal. And then we would have known here's a case, here's a case number, as Ms. Moriyama admitted, she should have given the case number. But here's a case number. Now we can go to court and try to get that complaint unsealed. We have a remedy now. But to get these extensions of time of the 90-day time limit without notice to the other side, we have no opportunity to try to contest those extensions. Your Honor, that's all I'd like to address on the extensions of time issue. I just want to make sure I understand your argument, though. It is in the disjunctive. It says that filing may extend the period for filing a complaint for good cause shown or upon agreement of the parties. Now you're saying, well, parties is referred to. I take that point. But what if the government is holding up filing a complaint because they're not sure who they think they need to serve it upon? That's their good cause. We don't know who the party is at this point that we want to file it against. So why is that an impermissible reading? They have a party. They do know who the party is. Who is the party? The person who filed the claim with the seizing agency. But what if there's more than one claim, more than one party filing a claim? Then those are the parties. They are the parties. It's plural. Then they are the parties. Those are the persons who have to be notified. All right. Yes. Go ahead. As far as the issue of the optional case that was just decided by Judge Collins as a matter of law, Mr. Rigari argued that it was, and I think Judge Trott asked him, well, was that just a procedural problem? Did they just not oppose it properly? But in fact, the Court, in its order that the Court has, this Court has, the Court specifically said and referred to the fact that optional did not present certain evidence at trial, didn't concentrate only on the fact that their response to the motion for judgment as a matter of law was weak, but she actually specifically referred to the lack of presenting evidence at trial to meet the elements. She sat through the trial. She knew what was presented. So if you look at her order, she specifically refers to the failure to present evidence at trial as to all of those elements. Your Honor, as to the motion for summary judgment as to the issue of the elements of fraud, I think Judge Thomas and the other judges, your other judges, hit on an important note in this, in that case, the lack of a proof of a fraud scheme. The government's summary judgment motion never, or opposition to summary judgment motion, never even addressed the elements of fraud. The government's appellate brief never even addressed the elements of fraud. Only on their reply brief, after it was raised that they didn't prove these elements, the government then threw in some case law and some facts, but still did not concentrate on the proof as to the elements of fraud in this case. Well, what's wrong with the idea that, I mean, you heard my questioning of the government, but the flip side of it is, isn't there enough of a scheme here to get by summary judgment? Isn't that tender enough? I'm sorry. I mean, they start off with the idea that you can, using inferential reasoning, you start transferring, your client starts transferring money out of the company, goes to an investor and says, we had great returns last year, your money's safe, so forth, gets the money, keeps transferring it out, eventually shut down business. Isn't that enough of an inference of a scheme that gets beyond summary judgment? Absolutely not, Your Honor. I mean, if you look at the way they briefed it in the summary judgment motion, you look at the way they briefed it in the appellate briefs, they don't really say that. They throw out a lot of things that are very confusing, and there's two, apparently two schemes. There's one against us, apparently, and one against optional, which the government's alleging is this grand scheme. But they don't specifically point to what was realistically a scheme, an intentional scheme to defraud or an attempt to do certain acts at the time that the scheme was started, or even continuing through that. Right, but let's just take a step back a minute, set the brief aside, what they're arguing. I mean, why isn't it enough to say there's an underlying scheme to take money from investors, put it in this company, and to convert it for personal uses, and that one, you've got some transfers before the representations, two, you've got some representations that are meeting made, money invested, then diverted. What's wrong with that? Well, I think as Your Honor pointed out, first of all, the idea of the scheme is that here's someone who went to a major company in Korea and said, we want you to invest your money. They have $19 million to invest. Someone, the implication is this one individual guy and his wife went to this major company with 900 employees and said, we want your money to invest. Without checking up on what he's saying, they said, sure, take our $19 million. Right, but that's a factual defense. It's a ‑‑ it can be a factual defense if, in fact, that's the only defense or the only thing in conflict with that, Your Honor. But they specifically went forward and said, here's what the scheme is. The scheme is someone said that they can get this rate of return. And that's supposedly what the scheme is from the beginning. Well, the scheme is then to take the money and run it out the back door. Right. That's supposedly the scheme. But here's this major company who is given right in their face from the beginning saying, we can get you this investment. It's like the money did go out the back door. I'm sorry? It's like the money did go out the back door. Not necessarily. Where did it go? What's your defense? It went into this fund called the MAF fund, which is an investment fund, with several other investors. One of them, Mr. Lee, referred to as Symtec. Symtec. There was a whole lot of other investors that were involved in that, and the money was put into this joint mutual fund. And then what happened? And then the money was invested, and people got returns on their investments. And apparently, well, there's a lot more to it, but the brother of the owner of Das was in partnership with Mr. Kim in starting this company. And that was apparently the motivation for investing with that company. That would be the defense. In fact, it was just the brother of the owner of Das who was in partnership with Mr. Kim, and they did this together, and they were just trying to get a good return on investment. So the defense is this was just a big investment that went bad? Exactly. Exactly. And as a result of what Judge Thomas referred to as possibly puffing, the investment didn't make the return that they were hoping. And they returned part of the money. And I'm sorry, Your Honor. No, go ahead. They returned some of the money. They returned $5 million approximately. But the rest they didn't have. It was gone, and the brother or his partner was still involved in the company and eventually left the company. All that's well and good, except for the money transfers, the alleged embezzlement out of the company. That's way, way, way far down the line. Then Mr. Kim had left the company and purchased another company called Optional. It was New Vision Ventures at the time, and then he changed the name to Optional. Invested his own money in that company because he purchased stock, and eventually sold his stock, and the money was then transferred back to the United States. If you're looking for defense, the defense is that that was his own money that he invested that he brought back to the United States. Those are the wire transfers that Mr. Lee was referring to. So there's a perfectly good defense if we have to get that far, but we shouldn't get that far because the government's obligation is to prove the fraud scheme, and I don't believe the evidence was there for that. Which leads me then also to what Mr. Zweig was talking about as far as DAS and whether or not they still get the chance to prove their constructive trust claim after the summary judgment motion is lost. First of all, I suppose if, well, let's go outside. Let's go to the jurisdictional issue first. Yeah. I don't understand. My view is, I mean, it's in rem jurisdiction. Once everyone's joined, the court's jurisdiction is complete. I have difficulty seeing why there's not jurisdiction to adjudicate those claims. I respectfully disagree, Your Honor, because it is a forfeiture case, and if the forfeiture case fails, then the case is over. But even assuming that the court believes that they can hear a constructive trust claim, which is another, the same fraud claim that the government lost on. Well, that's a collateral, or that's an estoppel issue perhaps. But just on the jurisdictional question, I have trouble seeing the argument. I understand the Fourth Circuit case, but the Fourth Circuit, the government withdrew the case before anybody answered. Well, yeah. There's two parts to it. One is the dismissal as to certain properties. It was the first time we were here in court for that. The second is the summary judgment motion. The dismissal, that is a purely jurisdictional question because there was no defense, essentially. There were no actual merits of the case presented there. It was the case was over from the dismissal. Summary judgment motion is a little different because DAS and optional are full parties to the action, and they present their own evidence and lost on their presentation as far as an opposition to summary judgment. If you're talking about allowing a constructive trust claim, it's exactly the same evidence. They would have to prove again the fraud scheme, which they could not, in fact, prove as a result of the summary judgment motion. So there is a distinction between the dismissal and the summary judgment motion. I don't, though, and I know the Court sees it as well. I'm just speaking for myself. I don't want to give you reaction. Yeah. You may be leaning in the other direction on that, but it is in fact an in rem case. But a case only exists because the government brought it and brought it under a criminal forfeiture or under a forfeiture statute. These other parties appear, but what they're talking about is proving merits of a case the government can't succeed on because they didn't file on time. And so if the government didn't file on time, there's no case. That's it. The case is out. There's no other parties to even join. It's as if the parties were never in existence in this case. And you return to the status quo. So as far as the jurisdictional question, there are some differences between the dismissal and the summary judgment motion. I believe I've covered pretty much what the other parties have covered, unless the Court has any other questions. Any further questions? No. Thank you very much. We'll give you two minutes each. Thank you, Your Honor. It's been a long morning, and I don't want to belabor anything that's in the briefs of the jury, but I do want to address Mr. Honig's comment about the proof of the elements. I didn't hear what element was missing in the government's submission to the district court. The elements are basically a scheme to defraud, use of the wires in furtherance, and specific intent. The evidence that the government submitted clearly did show a scheme to defraud. Judge Trott asked Mr. Honig, what's the defense? And Mr. Honig basically responded, well, it could have been an investment that just weren't bad, or they had their own sums of money. Well, I would respond to that, Your Honor. That may be an inference that he could argue based on whatever evidence he can muster, but we're also entitled to argue based on the evidence that's in the record our own inference, and that's that it was a scheme to defraud, and it was a scheme to take the money out the back door, as the evidence readily shows. Mr. Honig also mentioned that DAS did not check its facts, perhaps. That's an argument that I think goes to the materiality aspect of an intent to defraud. That's in the briefs. I don't want to belabor it, but the Brown decision that Mr. Honig relies on has been thoroughly discredited in the Ninth Circuit and is not really the law in the Ninth Circuit. It's basically if you defraud somebody, it doesn't matter how gullible that person is. If a reasonable person would rely on that representation, then it's a material misrepresentation. And with that, Your Honor, I'll turn it over to my colleagues. State lawyer, do you have anything? Your Honor, I'll submit my case. All right. Very good. Just briefly, Your Honors, as to the argument made that the money was invested, it was a bad deal. There's nothing in the record about it was a bad investment. The record shows the money went out the back door, as was suggested earlier in argument. I also wanted to say on the jurisdictional issue, I don't know that there's a lot more to be said, but I should mention the Second Circuit has agreed with the position that the district court retains jurisdiction in the Kings Highway case. The Sixth Circuit has also agreed in the $515,000 case, and the rubric in Republic Bank on NREM jurisdiction supports the conclusion that the district court retains jurisdiction on that issue. I did not hear any argument on the Celotex standard or the failure to look at the content of the evidence on summary judgment as opposed to the form, so I do not have any rebuttal on that point. I would like to just close with one quote that we have cited from this circuit in the EEOC v. General Telephone, which says, quote, it is the historic purpose of equity to secure complete justice. The courts will be alert to adjust their remedies so as to grant the necessary relief. And again, as I started, we are just seeking a day in court for DAS for our client. Thank you very much. Thank you. Mr. McGarry, we'll close with you. The only point that I would like to address is the collateral estoppel argument that was raised. The district court did not rule at the summary judgment state on any collateral estoppel. Her ruling was that upon the dismissal of the forfeiture case, the court lost jurisdiction and there was no determination to be made among the competing claimants. So there was no discussion or no presentation made to the district court of any of those particular elements that would be necessary for a collateral estoppel or res judicata. So regardless of how this court rules with regard to the summary judgment motion that was brought by the government, we believe that the case should be remanded for a determination of the competing ownership claims to the district court. Thank you, counsel. Thank you. Thank you all for your arguments and for your briefing. I realize it's a complex case and you operated under some tight oral argument deadlines, which is always frustrating. I haven't been in your shoes, I know that. So we thank you again and the case dissert will be submitted.
judges: Trott, Thomas, Fisher